UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DOMINIC HANNA, by and through his guardian ad litem, KATHY HENDERSON,**<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF FRESNO, et al.,**<br><br>Defendants. | 1:14-cv-142-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS (DOC. 29)** |

## I. INTRODUCTION

Dominic Hanna, by and through his guardian ad litem, Kathy Henderson ("Plaintiff"), brings this case due to Defendants' alleged violation of his constitutional rights. Doc. 21, Second Amended Complaint ("SAC"), at 1. Currently before the Court is Defendants' motion to dismiss the SAC in its entirety under Fed. R. Civ. P. 12(b)(6) on the ground it fails to state a claim for relief against Defendants. For the reasons discussed below, the Court GRANTS Defendants' motion.

## II. BACKGROUND[1]

Plaintiff was at all relevant times a pre-trial detainee at the Fresno County Adult Detention

---

[1] These background facts are drawn exclusively from the SAC, the truth of which must be assumed for purposes of a Rule 12(b)(6) motion to dismiss.

1

Facility ("the jail") in Fresno, California. SAC ¶ 4. Plaintiff brings this case under 42 U.S.C. § 1983 ("§ 1983") on the ground the County of Fresno ("the County") and various county employees involved in his detention violated his constitutional rights. *Id.* ¶ 2. Specifically, Plaintiff alleges that Defendants' violation of his constitutional rights "were a direct and legal cause of the permanent mental and physical injuries which result in Plaintiff's physical and mental incapacity." *Id.* ¶ 4.

Plaintiff was booked into the jail around 9:30P.M. on February 6, 2012. *Id.* ¶ 25. Plaintiff was noted to suffer from a bipolar disorder. *Id.* A release of information was signed and faxed to the pharmacy at Target in Hanford, regarding the medications, Lamictal, [P]laintiff . . . had been prescribed, and had brought with him to the Jail." *Id.* Plaintiff alleges that "[a] suicide and mental health assessment was completed by intake staff without qualifications or licensure to do so." *Id.*

The next day, Plaintiff was observed "pounding the back of his head against his cell bars," which allegedly caused "a hematoma the size of a tennis ball on the back of his head." Later that day,

> Plaintiff Hanna had been heard to say that he did not want to go to trial because he wanted to "end it." Custody staff also saw plaintiff Hanna remove something that looked like socks from his mouth or throat as if he had been trying to gag or choke himself. Custody staff had also seen plaintiff write a letter he chewed up leaving a portion of the letter with the word "final" on it.

*Id.*¶ 31. Plaintiff's mental health status was assessed; he was determined to be a danger to himself and was placed into a suicide cell for his safety. *Id.* ¶ 32.

At approximately 3:30A.M. on February 8, 2012, Defendant Tricia Nekola "determined that [P]laintiff . . . no longer met suicide cell criteria and recommended that he be removed." *Id.* ¶ 33. At approximately 10:42P.M., Plaintiff was seen by a jail staff member to obtain a medical records release and the staff member assessed plaintiff's mental health status as 'not a danger to self at this time.'" *Id.*

Around 2:30 P.M. on February 9, 2012, Plaintiff attempted to commit suicide by stuffing two socks down his throat and ramming his head into the cell wall. *Id.* ¶ 34. Medical personnel did not arrive for two to three minutes. *Id.* CPR was administered on Plaintiff and he was transported to the emergency room. *Id.*

As a result of his suicide attempt, Plaintiff suffered severe, life-long injuries. *Id.* ¶ 35. Plaintiff

2

alleges he never received his Lamictal "or any other similar medication" from the time he was booked until his attempted suicide. *Id.* ¶ 26. P

Plaintiff names the County, seven individuals, and Does 1-through 50, inclusive, as Defendants. Plaintiff alleges that Defendant Sheriff Margaret Mims ("Mims") "is ultimately responsible for the health care and safety of prisoners in the jail." *Id.* ¶ 7. Defendant "Edward Moreno, Director of the Department of Public Health, is responsible for the provision of health care services including mental health care to all prisoners in the jail." *Id.* ¶ 9. Defendant "Pratap Narayen, the Medical Director of the Division of Correctional Health in the Fresno County Department of Public Health, was at all times responsible for the delivery of health care services to all prisoners in the Jail, including mental health care." *Id.* 10. Defendant "Karen Nunez, Nursing Services Manager of the Division of Correctional Health in the Fresno County Department of Public Health, is and . . . was responsible for supervising the operation and administration of health care services in the Jail, including mental health care." *Id.* ¶ 11. Defendant "Rick Hill, the Captain of Detention in the Jail, is and . . . herein was responsible for custody operations, prisoner classification, correctional officer training, security emergency response, and prisoner grievances." *Id.* ¶ 12. Defendant "Marilynn Weldon, Captain of Inmate Programs and Contracts, is and . . . was responsible for oversight of the contract with the Department of Public Health for the delivery of health care in the Jail." *Id.* ¶ 13. Defendant "Tricia Nekola, was . . . a Licensed Vocational Nurse II, at the Jail." *Id.* ¶ 14. Plaintiff sues all individually named Defendants in their official and individual capacity.

The Doe Defendants "include Jail Psychiatric Services staff, from February 6, 2012 through February 9, 2012, Fresno County employees, employees of Fresno County Department of Public Health, administrators and other personnel." *Id.* ¶ 15. Plaintiffs allege Doe Defendant 21, the main jail Lieutenant, is the individual "who approved the removal of [P]laintiff . . . from the Main Jail Suicide Cell, February 8, 2012 at 3:30 a.m." *Id.* ¶¶ 14, 48.

Plaintiff alleges three causes of action against Defendants under § 1983. The first claim is for the alleged denial of his rights under the Eighth and Fourteenth Amendment due to Defendants' alleged

3

deliberate indifference to his mental health needs. *Id.* at 12-16. The second is for Defendants' failure to train, supervise, and discipline employees. The third is for *Monell* liability.

### III. STANDARD OF DECISION

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."

4

*Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

**A.     Plaintiff's First Cause of Action.**

Plaintiff's first cause of action is brought under § 1983. Plaintiff alleges that Defendants denied his constitutional rights under the Eighth and Fourteenth Amendments. Specifically, Plaintiff alleges that Defendants exhibited deliberate indifference to his mental health needs during his detention and but for their conduct he would not have sustained the injuries that he did.

A pretrial detainee's claim of failure to provide care for serious medical needs is analyzed under the substantive due process clause of the Fourteenth Amendment. *Simmons v. Navajo County, Az.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Lolli v. Cnty of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003); *Gibson v. Cnty of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003). "With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.' " *Gibson*, 290 F.3d at 1187 (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a [detainee's] pain or possible medical need, and harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)). Deliberate indifference may be manifested when officials "deny, delay or intentionally interfere with medical treatment." *Id.* (citing *McGuckin*, 974 F.2d at 1060 (internal quotations omitted)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Indifference to "medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980). Under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a [detainee's] serious medical needs on the basis of either his action or his inaction." *Gibson*, 290 F.3d at 1188 (alteration in original). "A defendant must *purposefully* ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060 (emphasis added).

Plaintiff's allegations are entirely devoid of any facts indicating that Defendants purposefully ignored or failed to respond to Plaintiff's alleged mental health needs. Rather, Plaintiff's allegations against Defendants are entirely premised on their alleged negligence. In fact, Plaintiff alleges numerous facts to demonstrate that Defendants took many affirmative steps in an effort to provide Plaintiff with medical care. When Plaintiff was booked, he underwent a medical intake screening and "[a] release of information was signed and faxed to the pharmacy at Target in Hanford, regarding the medications, Lamictal, Plaintiff . . . had been prescribed, and had brought with him to the Jail." SAC ¶ 25. Then "[a] suicide and mental health assessment was completed by intake staff." *Id.* Plaintiff alleges that he was never provided his medication, but he does not allege that Defendants purposefully ignored his medical needs or purposefully failed to give him his medication.

The next day, February 8, 2012, Plaintiff's mental health status was assessed. Because he was determined to be a danger to himself, "he was placed into a suicide cell for his own safety." SAC ¶ 32. On the following day, he was assessed and determined to no longer meet suicide cell criteria by two jail staff. "Psychiatric Services was to follow up 'if scheduled' and as needed for crisis." *Id.* Later that day, a different jail staff member "assessed [P]laintiff's mental health status as 'not a danger to self at this time.'" *Id.* ¶ 33. Plaintiff attempted suicide on February 9, 2012. Emergency medical services arrived

"two to three minutes" after. *Id.* ¶ 34. He was then transported to the emergency room. *Id.*

Construing the facts in the light most favorable to Plaintiff, there is simply no indication that Defendants' conduct amounted to purposeful ignorance of Plaintiff's medical needs or failure to address them. *McGuckin*, 974 F.2d at 1060. Plaintiff's mental health status was assessed multiple times by multiple different jail staff, who made the medical decision to release Plaintiff to his cell, where he was able to attempt suicide. The thrust of Plaintiff's claims against Defendants is that their allegedly substandard care allowed Plaintiff to attempt suicide. As alleged, Defendants' allegedly imperfect and ineffective health care does not amount to a deprivation of Plaintiff's constitutional rights. *Broughton*, 622 F.2d at 460; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence does not amount to a constitutional violation).

**B.      Plaintiff's Second Cause of Action.**

Plaintiff's second cause of action is against the "County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20," ("the Supervisor Defendants") who Plaintiff alleges "were charged by law with the selection, assignment, supervision and training of custody, psychiatric and medical staff." SAC ¶ 57. Plaintiff alleges that the Supervisor Defendants "knew or reasonably should have known, that allowing unqualified, inadequately trained custodial and medical staff to make psychiatric assessments was likely to cause serious injury or death to Jail inmates suffering from mental illness." *Id.* ¶ 62. Plaintiff alleges the Supervisor Defendants' "lack of adequate training, monitoring, supervision and staffing, was the legal and actual cause of the injuries of [P]laintiff." *Id.*

Supervisors are liable for alleged constitutional violations only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *Preschooler II v. Clark Cnty School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). Because "the pleading of supervisorial liability is subject to the *Iqbal* standards . . . there must be facial plausibility in a plaintiff's allegations that some action/inaction on the part of the supervisor *caused* her alleged

constitutional injury." *Alston v. Cnty of Sacramento*, 2012 WL 2839825, at *4 (E.D. Cal. July 10, 2012) (emphasis in original).

As discussed above, Plaintiff has failed to plead the existence of any constitutional violation. Plaintiff therefore cannot state a claim against the Supervisor Defendants on the ground they caused or failed to prevent the violation of his constitutional rights.

**C.      Plaintiff's Third Cause of Action.**

Plaintiff's third cause of action is a *Monell* claim against the Supervisor Defendants. SAC at 19. Plaintiff alleges that the Supervisor Defendants "developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to [Plaintiff's] constitutional rights which caused the violation of such rights. SAC ¶ 69.

To establish municipal liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), Plaintiff must first establish that a municipal employee deprived him of a constitutional right. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Next, Plaintiff must show that an official city policy, custom, or practice was the moving force behind the constitutional injury. *Monell*, 436 U.S. at 694. A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990).

As discussed above, Plaintiff has failed to plead sufficient facts to demonstrate that he suffered any deprivation of his constitutional rights. Thus, his *Monell* claim necessarily fails. *See Heller*, 475 U.S. at 799.

### V. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the SAC in its entirety WITH LEAVE TO AMEND. Plaintiff shall file any amended complaint within 20 days of

electronic service of this order, but will be given only one chance to do so if he wishes. This Court is not, and should not be, a service for writing pleadings for parties by having to rule on pleading decisions more than once.

IT IS SO ORDERED.

Dated: **July 8, 2014**     **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE