ROBERT NAVARRO
Bar No. 128461
Attorney at Law
1245 N. Wishon Ave., Ste. 3
Fresno, California 93728
tel: 559.497-5341   fax:  559.497-5471
robrojo@att.net

CAROLYN D. PHILLIPS
Bar No. 103045
Attorney at Law
P.O. Box 5622
Fresno, California  93755-5622
tel: 559.248.9833   fax:  559.248.9820
cdp18@sbcglobal.net

Attorneys for Plaintiff DOMINIC HANNA

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC HANNA by and through his guardian ad litem KATHY HENDERSON, | **Case No.  1:14-cv-00142** |
| Plaintiff, | **THIRD AMENDED COMPLAINT FOR DAMAGES FOR WILLFUL VIOLATIONS OF CIVIL RIGHTS** |
| v. | (42 U.S.C. § 1983) |
| THE COUNTY OF FRESNO; MARGARET MIMS, individually and her official capacity as Sheriff of the County of Fresno; EDWARD MORENO, individually and in his official capacity as Director of the Department of Public Health; PRATAP NARAYEN, individually and in his official capacity as the Medical Director of the Division of Correctional Health; KAREN NUNEZ, individually and in her official capacity as Nursing Services Manager of the Division of Correctional Health; RICK HILL, individually and in his official capacity as Captain of Detention in the Fresno County Adult Detention Facilities ("Jail"); MARILYNN WELDON, individually and in her official capacity as the Captain of Inmate Programs and Contracts; TRICIA NEKOLA, individually and in her official capacity as LVNII at | **JURY TRIAL DEMANDED** |

the Fresno County Jail; THAYIN VU,
individually and in his official capacity as LMHC
at the Fresno County Jail, and DOES 1 through 50,
inclusive.

_____ Defendants. _____

## INTRODUCTION

This civil rights lawsuit seeks monetary damages for Defendants' willful and knowing deprivation of plaintiff Dominic Hanna's constitutional rights and their deliberate indifference to his medical care resulting in three suicide attempts while housed in the Fresno County Jail, the last of which caused him anoxic brain damage, permanent and severe physical and mental disabilities requiring total care for all his daily needs for the rest of his life.

## JURISDICTION AND VENUE

1.      Plaintiff has suffered injuries traceable to the actions of the defendants, and the action is a case or controversy over which this Court has jurisdiction under Article III of the United States Constitution.

2.      This case is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because the claims for relief arose in this district.

## PARTIES

4.      Plaintiff DOMINIC HANNA is a physically and mentally incapacitated adult, who is represented in this litigation by KATHY HENDERSON his guardian *ad litem*. Plaintiff Hanna was at all times mentioned herein incarcerated as a pretrial detainee at Fresno County Adult Detention Facility ("Jail"), Fresno, California. The

unlawful actions of the defendants were a direct and legal cause of the permanent mental and physical injuries which resulted in plaintiff's physical and mental incapacity.

5.      Defendant County of Fresno ("County"), is a political subdivision of the State of California, duly authorized under the laws of the State of California to maintain a detention facility.  The County is responsible for the funding, policies, training and staffing for the care and safety of all prisoners (pretrial detainees and convicted inmates) in the Jail.  The County assumes the risks incidental to the maintenance of the Jail and the employment of medical and custodial staff for the Jail.

6.      The County of Fresno is being sued under the federal civil rights laws for its unconstitutional systemic failure to provide adequate mental health care and failure to protect prisoners from physical harm.  The County through its custom, policies, pattern and practice has knowingly failed to provide adequate mental health care and safety to those incarcerated in the Jail.  This failure caused plaintiff Hanna permanent mental and physical harm, severe and unnecessary pain and injury, and violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

7.      During all times mentioned herein, defendant Sheriff Margaret Mims was ultimately responsible for the health care and safety of prisoners in the Jail, but she has failed to meet this responsibility. Defendant Mims is sued in her official and individual capacity.  Sheriff Mims and the other Defendants have been deliberately indifferent to the unreasonable risk of harm caused by the policies and practices that result in an ineffective mental health care screening process, an ineffective mental health care delivery system, delayed access to medications, under-qualified and insufficient numbers of mental health care staff, and the delivery of substandard mental health care.

One consequence of such policies and practices is that prisoners, such as plaintiff Hanna, with serious mental health conditions suffer life-threatening symptoms that could have been avoided if timely and adequate care had been provided.

8.      Further, Sheriff Mims and the other Defendants have been deliberately indifferent to the safety of inmates with severe mental health conditions by housing inmates such as plaintiff Hanna in the Jail's South Annex ("AJ3"), which contain known dangerous jail construction design flaws that make it difficult for Jail staff to monitor the safety of the inmates housed there.

9.      Edward Moreno, Director of the Department of Public Health, is responsible for the provision of health care services including mental health care to all prisoners in the Jail. His responsibilities include, but are not limited to, approving all policies and procedures for the delivery of health care in the Jail.  Defendant Moreno is sued in his official and individual capacity.

10.      Pratap Narayen, the Medical Director of the Division of Correctional Health in the Fresno County Department of Public Health, was at all times responsible for the delivery of health care services to all prisoners in the Jail, including mental health care.  Defendant Narayen is sued in his official and individual capacity.

11.      Karen Nunez, Nursing Services Manager of the Division of Correctional Health in the Fresno County Department of Public Health, is and at all times mentioned herein was responsible for supervising the operation and administration of health care services in the Jail, including mental health care.  Defendant Nunez is sued in her official and individual capacity.

12.      Rick Hill, the Captain of Detention in the Jail, is and at all times mentioned herein was responsible for custody operations, prisoner classification,

correctional officer training, security emergency response, and prisoner grievances. Defendant Hill is sued in his official and individual capacity.

13.   Marilynn Weldon, Captain of Inmate Programs and Contracts, is and at all times mentioned was responsible for oversight of the contract with the Department of Public Health for the delivery of health care in the Jail. Defendant Weldon is sued in her official and individual capacity.

14.   Tricia Nekola, was at all times mentioned herein a Licensed Vocational Nurse II, at the Jail. The Main Jail Lieutenant, Doe 21, whose identity is not yet known to the plaintiff, who approved the removal of plaintiff Hanna from the Main Jail Suicide Cell, February 8, 2012 at 3:30 a.m.   Defendant Nekola is sued in her official and individual capacity.

15   Thayin Vu, was at all times mentioned herein a Licensed Mental Health Clinician at the Jail.   Defendant Vu, named in the original complaint as a Doe defendant, was responsible for the suicide risk assessment which preceded plaintiff's third suicide and resulted in the injuries complained of herein.   He is sued in his official and individual capacity.

16.   The fictitious defendants, sued herein as Does 1 through 50, inclusive, include Jail Psychiatric Services staff, from February 6, 2012 through February 9, 2012, Fresno County employees, employees of Fresno County Department of Public Health, administrators and other personnel whose job duties include: the provision of mental health care services, evaluation for and identification of mental illness, treatment for mental illness, ensuring all Fresno County Jail staff and Jail Psychiatric Services staff follow standard medical protocols regarding the identification of suicidal individuals, the prevention of unreasonable risk of serious injury or death, the provision of

medically necessary psychotropic medications to prisoners with serious mental health conditions when provided with valid prescriptions, ensuring that qualified staff complete thorough mental health assessments and suicide assessments, and provides training as to the requirements of policies and procedures, applicable state laws and state and federal Constitutional requirements. These defendants are liable for compensatory and punitive damages. The fictitious defendants will be renamed once their actual identities are ascertained, in accordance with Federal Rule of Civil Procedure 15.

17. Defendants and Does 1 through 50, inclusive, are sued in their individual capacities and as employees of the County of Fresno. At all times mentioned herein, Defendants and Does 1 through 50, inclusive, were acting within the course and scope of their employment and under color of state law.

18. Plaintiff is informed and therefore believes, and on that basis alleges, that at all times and places mentioned herein each Defendant and Does 1 through 50, inclusive, was the agent, representative and/or employee of the remaining named and unnamed persons, and was at all times and places mentioned herein acting within the purpose and scope of said agency, representation and/or employment.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19. The following allegations in this section are alleged on plaintiff's information and belief and on that basis are alleged to be true.

20. Defendant Mims is responsible for the care and safety of the approximately 2,300 prisoners in the Jail. In her role as Sheriff, she supervises a team of managerial staff that includes defendant Hill and defendant Weldon. Defendant Hill is responsible for the correctional operations of the Jail. Defendant Weldon oversees the

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No. 1:14-cv-00142 LJO/SKO*

contract with the Department of Public Health for the delivery of health care in the Jail. In this role, she works directly with defendant Moreno, Narayan and Nunez who are the Department of Public Health administrators responsible for the delivery of health care at the Jail. All of these parties are intimately familiar with the policies and practices described herein that created an unreasonable risk of harm to plaintiff Hanna during his incarceration at the Jail as a pre-trial detainee.

21.     Defendant Mims, in her role as supervisor and executive administrator of the Jail, and Defendant Hill as Captain of Detention in the Jail, have knowledge of the policies and practices described herein that created an unreasonable risk of harm to prisoners, including plaintiff Hanna, caused by inadequate mental health care and inadequate protection of physical safety, but defendants Mims and Hill have disregarded this risk.

22.     At all relevant times herein, defendant County, acting through the Fresno County Sheriff defendant Mims developed, implemented, enforced, encouraged, maintained and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the mental health care needs of Jail detainees and prisoners such as plaintiff Hanna which caused the violation of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.

23.     The constitutional abuses and violations by defendant County through the actions of its sheriff defendant Mims, and defendants Moreno, Narayan, Nunez, Hill, Weldon, Nekola, Vu, and Does 1 through 50, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, maintained, encouraged and sanctioned by defendant County including the failure: (a) to adequately supervise and train Jail custodial and medical and mental

health staff including Defendants, thereby failing to adequately discourage further constitutional violation on the part of its Jail custodial, medical and mental health staff; (b)  to properly and adequately monitor and discipline its employees, including Defendants; and (c)  to adequately and properly provide mental health care, suicide assessments, and protection from physical harm, instead the inadequate provision of mental health care services and protections of Jail inmates were tolerated and perpetrated by defendant County, Mims, Moreno, Narayan, Nunez, Hill, Weldon and Does 1 through 50.

24.     Upon information and belief, defendant County has, acting through the defendants Mims, Moreno, Narayan, Nunez, Hill, Weldon and Does 1 through 20, developed, implemented, enforced, maintained, encouraged and sanctioned a de facto policy, practice, and/or custom of deliberate indifference to the serious life-threatening medical and mental health needs of Jail inmates and failing to follow established mental health and suicide prevention protocols

25.     Plaintiff Dominic Hanna had a documented history of psychiatric problems including bipolar disorder, for which he required medications, treatment and periods of hospitalization for suicidal ideation, severe depression, and psychosis. Plaintiff Hanna received Supplemental Security Income based on his mental disability. He had previously been incarcerated both in Kings County, 2011, and Fresno County, 2009, his custodial and medical records were replete with information regarding his severe and debilitating mental health problems, and suicide attempts.

26.     On February 6, 2012, at approximately 9:30 p.m., plaintiff Hanna was booked into the Fresno County Jail. The Medical Intake Screening indicated that plaintiff Hanna suffered from a Bipolar disorder. A release of information was signed

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No. 1:14-cv-00142 LJO/SKO*

and faxed to the pharmacy at Target in Hanford, regarding the medications, Lamictal, plaintiff Hanna had been prescribed, and had brought with him to the Jail.  A suicide and mental health assessment was completed by intake staff without qualifications or licensure to do so.

27.     The information in the "BMED booking Sheet" which listed Lamictal as one of plaintiff's prescription medication was attached to plaintiff Hanna's "chart" and placed in Jail Psychiatric Services "Unverified BMed Bucket".  The sheet was "Received" by Jail Psychiatric Services on February 7, 2012.  Plaintiff Hanna was never provided Lamictal or any other similar medication, even though he twice attempted suicide on February 7, 2012.  Nor, was he provided any medications following his stay in the suicide holding cell.

28.     After being booked and screened plaintiff Hanna was housed at the South Annex Jail, third floor, ("AJ3"), as a pre-trial detainee. The South Annex Jail was built in 1947 and is the oldest facility in the Jail.  According to a Fresno County Jail Needs Assessment and Master Plan, dated September 24, 2008, "this facility is no longer functional for the housing of inmates."   Nonetheless, there were over 200 prisoners housed on each of the upper three floors of this jail, and there were only two floor officers providing direct supervision on each floor.

29.     Each floor is broken up into separate housing units that contain cells and adjoining dayrooms.  Each cell houses four prisoners.  The doors to the cells are left open periodically during the daytime, and prisoners are free to go in and out of the dayroom when the cell doors are open.  However, when the cell doors are closed, before officers can enter a cell, they must first operate an antiquated system of door controls.

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No. 1:14-cv-00142 LJO/SKO*

30.     The housing units in the South Annex Jail are located off long corridors. The "control rooms" on each floor, where one officer sits and watches monitors showing limited areas of the jail, have no visibility into the housing units.  Officers must walk down the corridors to observe the prisoners in the housing units.  All of these conditions in the South Annex Jail make it extremely difficult for officers to timely observe, prevent and respond to emergencies, and to transport injured prisoners.

31.     The inadequate and dangerous conditions at the South Annex Jail were known by defendants prior to February 6, 2012.   A 2006 report from the U.S. Department of Justice ("DOJ Report") warned that the construction design and crowding in the South Annex created a risk of harm to prisoners.  It described the risk due to visibility problems, the antiquated door control systems, and the small doorframes in the South Annex Jail.   It stated that the "obsolete 'linear type' construction" of the South Annex Jail was "very staff intensive and unsafe."

32.     On February 7, 2012, plaintiff Hanna repeatedly pounded the back of his head against the bars of his cell.  By the time custody staff observed this behavior, the battering had caused a hematoma the size of a tennis ball on the back of his head. The "SOAP" notations by "B. Welch" regarding this incident notes the time as 4:15 p.m., and states under "A" (for assessment) that Hanna had suffered "trauma—Self inflicted".  Mr. Hanna was provided 800 mg of ibuprofen.  The notation goes on to state that the "I/M (inmate), was evaluated by JPS (Jail Psychiatric Services) and placed in S/C (suicide cell)."

33.     However, in progress notes dated February 7, 2012, signed by defendant Thayin Vu, LMHC (Licensed Mental Health Clinician), at "1655" (4:55 p.m.), Vu stated that he "responded to a call from C/O on AJ3 stating that I/m fell off his bunk".  The

Correctional Officer told Vu that "He (Hanna) does not want to go to trial b/c he wants to end it." The floor Correctional Officer told Vu that custody staff saw Hanna take something out of his mouth or throat that looked like socks, as if he had been trying to gag or choke himself with the socks.  Custody staff had also seen plaintiff write a letter he chewed up leaving a portion of the letter with the word "final" on it.  Vu assessed plaintiff's mental health status while he was in a holding cell on the second floor of the Main Jail.  Defendant Vu, despite plaintiff's denial that he wanted to hurt himself or wanted to commit suicide, determined that plaintiff was a danger to himself.  Under assessment, the progress notes state "I/m appeared evasive in answering questions and presented as if nothing had happened."  Plaintiff was placed into a suicide cell in the Mail Jail for his own safety.

34.    At 3:30 a.m., on February 8, 2012, defendant Tricia Nekola, LVN II, determined that plaintiff Hanna no longer met suicide cell criteria and recommended that he be removed.  The Lieutenant agreed.  Jail Psychiatric Services was to follow up "if scheduled" and as needed for crisis.  Plaintiff Hanna was returned to AJ3.

35.    At 1:30 p.m., February 8, 2012, plaintiff Hanna was arraigned on pending criminal charges at the Fresno County Court. Then at 8:41 p.m., (the progress note is misdated 2011), defendant Vu again assessed Hanna.  The progress notes state Hanna had indicated he was "alright" and had said he had no suicidal ideation.  Hanna also told defendant Vu that he had taken Lamictal previously when he was incarcerated in the Kings County Jail from February 2011 until January 19, 2012, or 20 days before he was booked in Fresno County Jail.  A release for the Kings County Jail records was obtained.  Defendant Vu's assessment was that Hanna was not a danger to himself.

36.    Plaintiff Hanna was allowed to remain in his cell on AJ3 with access to

socks, a top bunk, but no prescribed or other psychiatric medication, and no mental health follow up.

37.     At approximately 2:30 p.m., on February 9, 2012, plaintiff Hanna attempted suicide by stuffing two socks down his throat, and ramming his head into a cell wall.  Plaintiff Hanna stopped breathing and was unresponsive for two to three minutes before Emergency Medical Services arrived.  When finally reached, plaintiff Hanna was found to have no pulse.  CPR was administered for seven minutes before spontaneous circulation began.  He was transported by ambulance to Community Regional Medical Center emergency where he was intubated.  During the intubation process medical personnel found and removed a second sock from his throat.  Plaintiff was admitted to the Intensive Care Unit where he remained until February 13, 2012.  He was a patient at Community Regional Medical Center until February 28, 2012 when he was discharged to the Community Subacute and Transitional Care Center.   On July 18, 2013, he was discharged to Napa State Hospital, as incompetent to stand trial, where he remains to this day.

38.     As a result of this suicide attempt, plaintiff Hanna suffered anoxic brain damage, with profound memory loss and impairment, including his inability to recall the attempted suicide. Plaintiff Hanna cannot stand, sit or walk and requires total care which includes care to provide him with all of his activities of daily living, including but not limited to, eating, dressing, toileting, bathing and basically all movement.

39.     From February 6, 2012 through February 9, 2012, no psychiatric medications were provided to Mr. Hanna.   Defendants had in place a policy implemented for the purpose of eliminating the provision of psychiatric prescription medications to inmates with known mental health diagnoses, and/or with current

psychiatric medication prescriptions.  Defendants knew that this policy placed mental health patients at risk of harm, yet defendants deliberately enforced this policy during Mr. Hanna's detention at the Fresno County Jail.

40.   This policy was followed despite Mr. Hanna's history of mental illness, despite the prescription medications he had brought with him to the jail, and despite plaintiff's two serious suicide attempts and explicit statements of an intent to commit suicide all within the first 24 hours of his detention.

41.   Further, neither defendant Nekola, LVN II, nor the unidentified Doe Defendant Lieutenant, both under the supervision of Defendant Hill, had expertise, training, or qualifications to conduct a mental health assessment of Mr. Hanna, nor were they qualified to determine whether plaintiff Hanna was no longer a danger to himself, when Nekola and Doe Lieutenant released him from the suicide cell, and returned him to his regular cell in AJ3, without consulting a psychiatrist or other qualified personnel.   These actions were done with the defendants' knowledge that they did not have the expertise or qualification to properly assess Hanna's mental status and thus they knowingly placed Hanna at risk of harm.  The supervisory defendants' deliberate policy of permitting unqualified and untrained personnel to make assessments and decisions regarding the custody and treatment of detainees with serious mental illness meant that said defendants knowingly denied, delayed and interfered with the adequate medical needs of such inmates, including Hanna.

42.   Defendant Vu knew that Hanna had twice made serious and injurious attempts to kill himself within his first day of incarceration.  Vu knew that Hanna had made statements to others and in writing of his intent to end his life because of the anxiety and pressure resulting from his criminal charges, and had used his own socks

in an attempt to assure asphyxiation and had flung himself against the hard surfaces of his cell in order to lose consciousness.  However, when asked by Vu regarding thoughts of suicide, Hanna denied any.  Vu still assessed that Hanna was a danger to himself and ordered him placed in a suicide cell.  When defendant Vu assessed Hanna the next evening, after Hanna had been arraigned on the criminal complaint, Hanna again denied suicidal thoughts, but Vu, knowing that the complex of pressures that caused Hanna to try to commit suicide twice the day before had only increased by his arraignment, and knowing that Hanna was still without his prescribed or other medication, believed Hanna's statements and found Hanna was no longer a danger to himself.  Further, Vu knew Hanna was housed in AJ3 where his earlier suicide attempts had occurred and that AJ3 was inadequate housing for Hanna because it lacked proper staffing and ability to observe and respond to self-destructive behavior.  Knowing the surrounding facts of Hanna's mental state and his very recent self-inflicted injurious conduct, defendant Vu's assessment on February 8, 2012, constituted a purposeful act or failure to respond to an excessive risk to Hanna's health and safety, and a willful denial, delay and interference with Hanna's adequate psychiatric treatment.

43.    Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive plaintiff Hanna of his constitutional rights under the Eighth, and Fourteenth Amendments to the U.S. Constitution.

44.    Defendants have acted with deliberate indifference to the constitutional rights of plaintiff Hanna.  As a direct and proximate result of the acts and omissions as stated herein by each of the Defendants, plaintiff Hanna's constitutional rights have been violated which has caused him to suffer physical, mental and emotional injury and pain, mental anguish, suffering, and permanent physical and mental incapacity.

# FIRST CLAIM FOR RELIEF

Violation of 42 U.S.C. 1983;
Denial of Rights under the United States Constitution,
8th & 14th Amendments; Deliberate Indifference to Mental Health Needs

45.     Plaintiff incorporates by reference all paragraphs above as if they were fully set forth here and, as a first cause of action, alleges:

46.     This is an action at law to redress the deprivation under color of statute, ordinances, regulations, custom, or usage of rights, privileges and immunities secured to plaintiff Hanna, by the Eighth and Fourteenth Amendments to the United States Constitution and arising under the Constitution, laws and statutes of the State of California.

47.     By their policies and practices described herein, each Defendant subjected plaintiff Hanna to an unreasonable risk of harm and injury from inadequate health care and violence.  Defendants and their agents or employees in their official capacities, continued to implement these policies and practices despite being aware of the resulting deprivation caused to prisoners such as plaintiff Hanna.  Defendants condoned or have been deliberately indifferent to the deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments caused by such conduct.  Defendants' policies and practices were the proximate and legal cause of plaintiff Hanna's injuries.

48.     During all times mentioned herein, the defendants, and each of them, separately and in concert, acted under color of law, to wit, under the statutes, ordinances, regulations, customs, and usages of the State of California.  Each defendant, separately and in concert, acted outside the scope of his or her jurisdiction and without authorization of law, willfully and knowingly, to deprive plaintiff Hanna of his right to

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No. 1:14-cv-00142 LJO/SKO*

freedom from cruel and unusual punishment and from state occasioned harm, injury, damage to bodily and mental integrity.

49.      Defendant Vu despite knowing of plaintiff Hanna's two attempts at suicide the day before, purposefully acted or failed to respond to the very real risk to Hanna's health and safety when he assessed Hanna as no longer a danger to himself and failed to provide needed medications.  Defendant Vu's conduct was a purposeful act or failure to respond to an excessive risk to Hanna's health and safety and it was a willful denial, delay and interference with Hanna's adequate psychiatric treatment.

50.      As a direct and proximate result of the defendants' acts and omissions in depriving plaintiff Hanna of his rights, privileges and immunities secured to him by the Eighth and Fourteenth Amendments to United States Constitution, plaintiff suffered severe and permanent mental and physical injuries, manifested by mental and physical incapacity requiring total care for the rest of plaintiff's life.

51.      As a further result of the above described acts and omissions, plaintiff Hanna was deprived of the rights and immunities provided to him under the laws and Constitutions of the United States and the State of California, including, but not limited to, his rights under the Fourteenth Amendment to be secure in his person, to be free from punishment without due process, and to equal protection of the laws.

52.      Plaintiff Hanna was entirely dependent on Defendants for mental health care and Defendants had a constitutional obligation to provide such care but failed to do so.  The mental health care in the Jail was woefully inadequate, subjecting plaintiff to an unreasonable risk of serious injury.  Defendants have a policy and practice of failing to employ qualified health care professionals, to properly or conscientiously train and supervise the conduct of such persons after their employment, and to provide timely

16

access to minimally adequate care.   Defendants' conduct demonstrated deliberate indifference and a reckless disregard for plaintiff's rights under the Eighth and Fourteenth Amendments.

53.   Defendants have a policy and practice of maintaining fewer health care positions than are necessary to adequately treat the number of prisoners in the Jail. There are insufficient mental health clinicians, psychiatrists, psychologists, therapists, social workers, and registered nurses to provide adequate care to Jail inmates, or to adequately screen, or monitor prisoners booked into the Jail with chronic or serious mental illness.   This practice is a major contributing factor in the woefully inadequate delivery of mental health to prisoners such as plaintiff Hanna.

54.   Defendant County has over the last four to five years, cut the Jail budget, and has systematically eliminated staffing positions for health care providers in the Jail including physicians, nurse practitioners, registered nurses, and psychiatric technicians. Defendants have eliminated these positions despite warnings that prisoner-patients would suffer serious harm from delayed access to care, poor medication management practices and entry-level providers practicing outside the scope of their licensure. Defendants ignored these warnings, and prisoner-patients such as Dominic Hanna suffered from inadequate health care as a result of defendants' deliberate indifference.

55.   As a result of these staffing shortages, Licensed Vocational Nurses (LVNs), Medical Assistants (MAs), and Psychiatric Technicians (LPTs), made sole determinations about whether prisoners should be seen by clinicians, are suicidal, or are in need of immediate psychiatric evaluation.   These entry-level health care providers were not qualified to do their own patient evaluations or assessments. Nonetheless, Defendants maintain a policy and practice of tasking LVNs, MAs and

LPTs with independently assessing prisoners' mental health concerns and determine whether a prisoner is a suicide risk. Persons such as Blanca Chavez, defendants Nekola and Doe 21 (a Main Jail Lieutenant), despite the lack of qualifications or licensure made critical decisions regarding plaintiff Hanna's mental condition and suicide risk.

56.     Defendants Nekola and Doe 21 made unsupervised determinations that plaintiff Hanna, who had a documented history of mental illness and a serious ongoing mental health condition, was not a potential danger to himself, which had serious life-threatening consequences.

57.     Defendants have a policy and practice of failing to adequately identify and treat mental health care needs of newly arriving prisoners during the screening and intake process. The screening at the Jail was inadequate to obtain information about whether plaintiff Hanna was a danger to himself.

58.     Defendants have a policy and practice of failing to provide medically necessary psychotropic medications to prisoners with known serious mental health conditions.  Defendants failed to provide plaintiff Hanna his medications even though he provided a valid prescription for Lamictal at his intake screening, and had two suicide attempts within the first 24 hours of his detention in the Jail.

59.     As a result of Defendants' pattern and practice of failing to provide medically necessary psychotropic medications, plaintiff Hanna who had a serious mental health condition and a long a documented history of receiving anti-psychotic or mood-stabilizing medications was not provided any psychotropic medication and suffered a recurrence of suicidality, on which he acted three times.

60.     Defendants have a policy and practice of failing to competently complete suicide cell assessments regarding the continued need for observation, and whether the

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No.  1:14-cv-00142 LJO/SKO*

inmate is a danger to himself

61. Defendants have a policy and practice to deny, delay and interfere with adequate psychiatric medical attention by qualified personnel. This policy and practice includes the following: failing to provide adequate assessment and treatment following suicide attempts; failing to provide adequate assessment and treatment following release from suicide watch; and failing to assess a prisoner's danger to self in context of the prisoner's mental health history prior to his detention or his self-injurious conduct during his detention. Plaintiff Hanna was never evaluated by a psychiatrist even though he twice attempted suicide the day after he was booked.

62. Defendants were mandated by law, *e.g.*, Welfare and Institutions Code section 15600 *et seq.*; Penal Code sections 147, 2650-2652, *et seq.*; and the Eighth and Fourteenth Amendments to the United States Constitution, to safely keep persons committed to the care and custody of the Jail. The failure of Defendants to provide adequate mental health care, and to safely keep plaintiff Hanna was the proximate and legal cause of his permanent mental and physical incapacity.

63. Defendants had the duty to provide adequate mental health services and treatment in accordance with sound principles of practice. To ensure the safety of prison inmates Defendants were required to diagnose prisoners with mental health needs and to provide adequate mental health services. Defendants acted in conscious disregard of plaintiff Hanna's physical safety in their failure to provide plaintiff adequate mental health services.

64. Plaintiff's attempted suicide was the reasonably foreseeable result of Defendants' above-described failure to provide necessary treatment, create a comprehensive mental health treatment plan, provide qualified and licensed staff,

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No. 1:14-cv-00142 LJO/SKO*

properly diagnose and treat, and take suicide prevention precautions mandated by law and policy.  As a result plaintiff Hanna attempted suicide February 9, 2012, causing permanent and profound mental and physical injuries.

## SECOND CLAIM FOR RELIEF

Violation of 42 U.S.C. 1983
Failure to Train, Supervise and Discipline Employees

65.     Plaintiff incorporates by reference all of the preceding paragraphs as if set forth here in full, and as a second claim for relief alleges:

66.     Prior to February 6, 2012 and continuing through February 9, 2012, defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, were charged by law with the selection, assignment, supervision and training of custody, psychiatric and medical staff.

67.     At all times material herein the Defendants were responsible for hiring, training and supervising custodial, medical, psychiatric staff regarding policy and procedures, medical protocols, and state and federal statutory duties to ensure the safety of inmates and the adequate provision of mental health care services to prisoners at the Jail.

68.     Defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, knew or in the exercise of reasonable care should have known that jail intake staff, defendant Nekola, Doe 21 (a Main Jail Lieutenant) were not licensed or qualified to complete a psychiatric assessment, or evaluate whether plaintiff Hanna was a danger to himself, nor were defendants Nekola or Doe 21 qualified or licensed to recommend, or approve release from suicide watch.

*Third Amended Complaint for Damages; Dominic Hanna v.  The County of Fresno, et al.,*
*Case No.  1:14-cv-00142 LJO/SKO*

69.     Further, defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, knew or in the exercise of reasonable care should have known that defendant Nekola and Doe 21 had not received adequate training in policies, procedures and medical protocol to ensure an inmate in a suicide cell received adequate psychiatric suicide assessment before releasing the inmate from the protections of the suicide cell.

70.     Defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, knew or in the exercise of reasonable care should have known that jail intake staff had not received adequate training in policies, procedures and medical protocol to conduct a psychiatric or suicide assessment during medical screening, nor was qualified to determine whether plaintiff Hanna should be provided medications for his pre-existing serious mental illness.

71.     Defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, knew or reasonably should have known, that allowing unqualified, inadequately trained custodial and medical staff to make psychiatric assessments was likely to cause serious injury or death to Jail inmates suffering from mental illness. This lack of adequate training, monitoring, supervision and staffing, was the legal and actual cause of the injuries of plaintiff Hanna.

72.     Defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, failed to properly train or supervise Jail Psychiatric Services staff regarding the protocols to follow to ensure that inmates returning from a suicide cell were competently evaluated as to suicidal risk.

73.     Defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, knew or reasonably should have known, that failing to properly

train Jail Psychiatric Services staff regarding the necessity to complete a competent psychiatric assessment of those inmates returning from suicide cell was likely to cause serious injury or death to Jail inmates suffering from mental illness. This lack of adequate training, monitoring, staffing, was the legal and actual cause of the injuries of plaintiff Hanna.

74.     As a result defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, failed to take the necessary steps to protect plaintiff Hanna from harming himself which was the legal and actual cause of the injuries suffered by plaintiff Hanna.

75.     The acts and omissions of defendant County, Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, were malicious, fraudulent and oppressive, with the wrongful intention of injuring plaintiff, with an improper motive amounting to malice, and in conscious disregard of his rights.

76.     As a result of these actions plaintiff Hanna was not provided adequate or necessary mental health services or adequate medications which was the legal and actual cause of plaintiff's permanent anoxic brain damage and permanent and profound physical injuries for which he requires and will require 24-hour total care for the rest of his life.

### THIRD CLAIM FOR RELIEF

### (Monell Claim)

77.   Plaintiff incorporates by reference the preceding paragraphs as if set forth in full, and as a third claim for relief alleges:

78.   At all relevant times herein, Defendant County of Fresno, acting through defendants Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20,

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,*
*Case No. 1:14-cv-00142 LJO/SKO*

developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the plaintiff Hanna's constitutional rights which caused the violation of such rights.

79.   Defendant County of Fresno, acting through defendants Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, unlawful actions were done willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights under the Eight, and Fourteenth Amendments to the U.S. Constitution.

80.   The constitutional abuses and violations by Defendant County of Fresno, acting through defendants Mims, Moreno, Narayen, Nunez, Hill, Weldon, and Does 1 through 20, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant County of Fresno, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its Jail custody and medical health care staff; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to adequately and properly investigate citizen complaints and reports of the abuses and constitutional deprivations in the Jail, and, instead, said abuses and constitutional violations were tolerated by the County of Fresno.

81.   Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

82.   Defendants have acted with deliberate indifference to the constitutional rights of Plaintiff.  As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused

him to suffer permanent physical, mental and emotional injury, and pain, mental anguish, suffering, humiliation and embarrassment.

### DEMAND FOR A JURY TRIAL

Plaintiff requests a trial by jury, consistent with his rights under the Seventh Amendment and other applicable law.

### PRAYER FOR RELIEF

**WHEREFORE** plaintiff prays for judgment as follows:

(a) General and compensatory damages including but not limited to physical and emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, profound memory loss and impairment, costs for future medical and psychiatric care, costs for future (for the rest of plaintiff's life) total care in a skilled nursing facility as a result of permanent physical and mental injuries, according to proof;

(b) Attorneys fees and costs;

(c) Costs of suit;

(d) Prejudgment interest;

(e) Punitive damages from the individual defendants based upon their malicious and wanton acts, according to proof;

(f) For such other relief as this Court deems just.

Dated: July 28, 2014

ROBERT NAVARRO
CAROLYN D. PHILLIPS


By:/s/ Robert Navarro
ROBERT NAVARRO
Attorney for Plaintiff
DOMINIC HANNA

24

*Third Amended Complaint for Damages; Dominic Hanna v. The County of Fresno, et al.,
Case No. 1:14-cv-00142 LJO/SKO*